UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAYMOND ZDUNSKI

    Plaintiff,

vs.

Docket No.: 19-cv-940-GWC

Hon. Geoffrey W. Crawford

ERIE 2 CHAUTAUQUA-CATTARAUGUS BOARD OF
COOPERATIVE EDUCATIONAL SERVICES ("BOCES"),
DAVID O'ROURKE, IN HIS OFFICIAL CAPACITY,
JOHN O'CONNOR, IN HIS OFFICIAL CAPACITY,
BRIAN LIEBENOW, LAURIE BURGER,
AND TRACY SMITH-DENGLER

    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**FELDMAN KIEFFER, LLP**

Adam C. Ferrandino, Esq.
*Attorney for Defendants*
1000 Rand Building
14 Lafayette Square
Buffalo, New York 14203
(716) 852-5875

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT..................................................................................1

II. SUMMARY JUDGMENT STANDARD....................................................................2

III. ARGUMENT..............................................................................................................2

    A. Plaintiff's Claims for Violations of 42 USC § 1983 Must be Dismissed as a Matter of Law........................................................................................................3

    B. Plaintiff's Claims for Violations of 42 USC § 1985 Must be Dismissed as a Matter of Law........................................................................................................7

    C. Plaintiff's Claims for Violations of 42 USC § 1986 Must be Dismissed as a Matter of Law........................................................................................................8

    D. Plaintiff's Claims for Violations of Title VII of the Civil Rights Acts of 1964 Must be Dismissed as a Matter of Law.................................................................8

    E. Plaintiff's Claims for Violations of the New York State Human Rights Law Must be Dismissed as a Matter of Law...............................................................11

IV. CONCLUSION........................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Annis v. Cty. of Westchester,*
   136 F3d 239, 245 (2d Cir. 1998)..................................................................................3

*Bentley v. AutoZoners, LLC,*
   935 F3d 76, 88 (2d Cir. 2019)......................................................................................9

*Boddie v. Schnieder,*
   105 F3d 857, 862 (2d Cir. 1997)..................................................................................7

*Britt v. Garcia,*
   457 F3d 264, 270 n.4 (2d Cir. 2006)............................................................................8

*Brown v. City of Oneonta, N.Y.,*
   221 F3d 329, 341 (2d Cir. 2000)..................................................................................8

*Celotex Corp. v. Catrett,*
   477 US 317, 327 (1986)...............................................................................................2

*Desir v. City of New York,*
   453 Fed.Appx. 30 (2d Cir. 2011).................................................................................2

*Jeffreys v. Rossi,*
   275 FSupp2d 463, 473 (SDNY 2003), aff'd, 426 F.3d 549 (2d Cir. 2005)..................2

*Kunik v. New York City Dep't of Educ.,*
   436 FSupp. 3d 684 (SDNY 2020) ...............................................................................3

*Mario v. P & C Food Markets, Inc.,*
   313 F3d 758, 767 (2d Cir. 2002)...............................................................................3, 6

*McDonnell Douglas v. Green,*
   411 US 792 (1973).......................................................................................................3

*Menaker v. Hofstra Univ.,*
   935 F3d 20, 30 (2d Cir. 2019)......................................................................................9

*Siddiqi v. N.Y. City Health & Hosps. Corp.,*
   572 F Supp 2d 353, 369-70 (SDNY 2008) ..................................................................9

*Skehan v. Vill. of Mamaroneck,*
   465 F3d 96, 110 (2d Cir. 2006)....................................................................................4

*Trans World Airlines, Inc. v. Hardison,*
   432 U.S. 63 (1977)............................................................................................................10

*Webb v. Goord,*
   340 F3d 105, 110 (2d Cir. 2003)........................................................................................7

*Weber v. AVX Pension Plan for Bargaining Unit and Hourly Employees,*
   2009 WL 3165627 (WDNY 2009) ....................................................................................2

**Statutes**

42 U.S.C. § 1983.................................................................................................................3

42 U.S.C. § 1985 ................................................................................................................7

42 U.S.C. § 1986 ................................................................................................................8

Title VII of the Civil Rights Act of 1964 ........................................................................11

NYHRL § 296 ...................................................................................................................11

**Other Authorities**

Fed.R.Civ.P. 56(c)(2)..........................................................................................................2

**Constitutional Provisions**

First Amendment ....................................................................................................... passim

Fourteenth Amendment .............................................................................................. passim

## I. **PRELIMINARY STATEMENT**

Plaintiff RAYMOND ZDUNSKI ("Plaintiff") alleges that he was discriminated against as a Christian and suffered retaliation, specifically termination, for his decision not to attend mandatory diversity training. Plaintiff alleges violations of his First and Fourteenth Amendment rights, violations 42 USC § 1983 in that Defendants deprived Plaintiff of his due process rights, equal protection under the law, conspiracy to interfere with Plaintiff's civil rights, neglect in preventing interference with Plaintiff's civil rights, employment discrimination on the basis of religion for failing to accommodate, disparate treatment and disparate impact and violations of New York State Human Rights Law. *See* Docket No. 1.

The Defendants, ERIE 2 CHAUTAUQUA-CATTARAUGUS BOARD OF COOPERATIVE EDUCATIONAL SERVICES ("BOCES"), DAVID O'ROURKE, in his official capacity, JOHN O'CONNOR, in his official capacity, BRIAN LIEBENOW, LAURIE BURGER, and TRACY SMITH-DENGLER (collectively referred to as "Defendants"), have moved for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the grounds that each is entitled to summary judgment as a matter of law because the causes of action proffered against them have no merit, and there are no contested facts sufficient to require a trial of the claims against them.

The Defendants respectfully request that Plaintiff's Complaint be dismissed, with prejudice in its entirety, for the reasons set forth herein and based upon the Affidavit of Adam C. Ferrandino, Esq., sworn to on October 14, 2021, with all attached Exhibits, and the Statement of Undisputed Facts dated October 14, 2021, which more fully set forth all of the pertinent and relevant facts of the case.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue for trial exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Weber v. AVX Pension Plan for Bargaining Unit and Hourly Employees, 2009 WL 3165627 (WDNY 2009). The Second Circuit has explained that Rule 56's "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 US 317, 327 (1986).

In order to raise a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts...and she may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. Rossi, 275 FSupp2d 463, 473 (SDNY 2003), *aff'd*, 426 F.3d 549 (2d Cir. 2005). As relevant to the allegations in Plaintiff's claims, the Second Circuit has held that "the salutary purposes of summary judgment - avoiding protracted, expensive and harassing trials - apply no less to discrimination cases than to commercial or other areas of litigation." Desir v. City of New York, 453 Fed.Appx. 30 (2d Cir. 2011).

## III. ARGUMENT

In his Complaint, Plaintiff alleges that he was discriminated against as a Christian and suffered retaliation, specifically termination, for his decision not to attend mandatory diversity training. Plaintiff alleges violations of his First and Fourteenth Amendment rights, violations 42 USC § 1983 in that Defendants deprived Plaintiff of his due process rights, equal protection under the law, conspiracy to interfere with Plaintiff's civil rights, neglect in preventing interference with Plaintiff's civil rights,

2

employment discrimination on the basis of religion for failing to accommodate, disparate treatment and disparate impact and violations of New York State Human Rights Law. *See* Docket No. __. As a result, Plaintiff is limited to these theories of liability.

**A.     Plaintiff's Claims for Violations of 42 USC § 1983 Must be Dismissed as a Matter of Law.**

In order to establish a § 1983 claim for religious discrimination, a plaintiff must demonstrate that (1) the defendant acted unlawfully under color of state law; and (2) the plaintiff suffered a denial of his federal constitutional or statutory rights as a result of defendant's unlawful action. Annis v. Cty. of Westchester, 136 F3d 239, 245 (2d Cir. 1998). In order to survive a motion for summary judgment on a discrimination claim brought pursuant to § 1983, a plaintiff must satisfy the three-part burden-shifting analysis articulated by the Supreme Court in McDonnell Douglas v. Green, 411 US 792 (1973). As set forth by the Second Circuit in Mario v. P & C Food Markets, Inc., 313 F3d 758, 767 (2d Cir. 2002), that three-part burden shifting analysis requires that:

> A plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

Kunik v. New York City Dep't of Educ., 436 FSupp. 3d 684 (SDNY 2020).

In this case, Plaintiff has alleged a violation of 42 USC § 1983 under the First and Fourteenth Amendments to the United States Constitution. There is no question that E2CCB is a

state actor. There is also no question that Individual Defendants acted solely in their capacity as Board members of E2CCB.

In addition, to prevail on a selective treatment or equal protection claim, a plaintiff must demonstrate that: (1) he was treated differently from other similarly-situated individuals; and, (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Skehan v. Vill. of Mamaroneck, 465 F3d 96, 110 (2d Cir. 2006).

It is clear and without question that Plaintiff was not deprived of a right, privilege or immunity secured by the Constitution or laws of the United States. Further, Plaintiff was not treated differently from other similarly-situated individuals.

As set forth in Attorney Affidavit and Statement of Undisputed Facts, E2CCB was approached by a transgender employee on the LoGuidice campus who requested accommodations to facilitate a gender transition. Plaintiff, as was all other E2CCB employees, was required to attend a training program on transgender and gender identity issues. Although E2CCB past training had incorporated district-wide training on gender identity and sexual orientation into larger topical areas, it became very clear as they discussed the human resources response to this employee's multifaceted needs that there were significant gaps in E2CCB's employee training. E2CCB determined that additional training was necessary to protect and support LGBTQ students and employees.

As a result, all E2CCB employees, including Plaintiff were required to attend a mandatory training program on these issues. Upon learning of this mandatory training program, Plaintiff vocalized to E2CCB employees that he did not believe he should be required to attend and would not attend. Plaintiff then sent an email declining to attend until such time that E2CCB provided

4

a similar program on offending Christians and stated that he had been offended by the use of certain language. It should be noted that Plaintiff never reported any such activity.

In response to Plaintiff's email, Plaintiff was advised that the training program was mandatory for all employees and its purpose was to create a safe workplace that is free from discrimination and harassment in accordance with E2CCB's policies. Plaintiff was also encouraged to report if he had witnessed or was subjected to any harassment or discrimination. Plaintiff responded in an email that he would not change his decision and that he would not attend the training program. Then, Plaintiff failed to attend the mandatory training program.

A subsequent email was send by E2CCB advising anyone who missed the prior program training sessions that make-up session had been scheduled. Plaintiff advised that he would not attend the make-up training program sessions either. After learning of Plaintiff's failure to attend, representatives of E2CCB as well as Plaintiff's union representative met with Plaintiff to encourage Plaintiff to attend and to advise Plaintiff that the purpose of the training was not religious and to advise of the repercussions should he fail to attend. Plaintiff was advised that his failure to attend could result in termination. In fact, Plaintiff executed a document reflecting his understanding of the same. Plaintiff again reiterated that he would not attend the training program. Plaintiff did not attend the make-up training program sessions.

E2CCB discussed the possibility of accommodating the Plaintiff due to his failure to attend the mandatory training session due to his religious objections. E2CCB determined that it was unable to accommodate Plaintiff's request to be excluded from the mandatory training session because allowing *anyone* to miss the training would have undermined E2CCB's commitment to creating a supportive culture for *all* employees and students. Dr. O'Rourke and the other administrators felt that if E2CCB granted *any* group or person – religious or not – a blanket

exemption from the mandatory training, they would have been unable to prevent that group or person from targeting and discriminating against employees and students in the LGBTQ community. Thus, Dr. O'Rourke concluded that granting Plaintiff the requested exemption would undercut the purpose of the training – to protect all individuals from unlawful discrimination.

A subsequent meeting took place with Plaintiff and Plaintiff advised that he did not have an excuse for failing to attend the make-up training sessions. Plaintiff recognized and acknowledged that his failure to attend was insubordination. Plaintiff was advised that he was terminated for his refusal to refusal to attend the mandatory training program. Plaintiff advised those in attendance at the meeting that they would be hearing from Plaintiff's lawyer.

With respect to the four (4) part test set forth in Mario v. P & C Food Markets, Inc., 313 F3d 758, 767 (2d Cir. 2002), Plaintiff is unable to satisfy the first part of the test as Plaintiff as he is not a member of a protected class. Even if Plaintiff was a member of a protected class, Plaintiff cannot demonstrate that Defendants harbored any bias, or that their actions were in any way related to such bias so as to establish an issue of fact. As a result, Plaintiff cannot meet the fourth element of the test.

However, even if Plaintiff could satisfy all four (4) elements of the aforementioned test, the facts demonstrate that there was a legitimate, nondiscriminatory reason for the adverse decision or action. That reason is, as admitted by Plaintiff, Plaintiff was terminated due to insubordination for his failure to attend the mandatory training program. E2CCB is committed to creating a supportive culture for *all* employees and students and a safe environment and to protect all individuals from unlawful discrimination. As determined by E2CCB, if E2CCB granted *any* group or person – religious or not – a blanket exemption from the mandatory training, they would have been unable to prevent that group or person from targeting and discriminating against employees

6

and students in the LGBTQ community. Thus, Dr. O'Rourke concluded that granting Plaintiff the requested exemption would undercut the purpose of the training – to protect all individuals from unlawful discrimination.

Further, Plaintiff was not treated differently from other similarly-situated individuals. This was mandatory training that all E2CCB employees were required to attend. As noted in its determination, the New York State Division of Human Rights, decided that the training was not religious but related to preventing discrimination in the workplace.

Based on all of the above, Plaintiff's claims under 42 USC § 1983 must be dismissed and Defendant's Motion for Summary Judgment must be granted as a matter of law.

**B.  Plaintiff's Claims for Violations of 42 USC § 1985 Must be Dismissed as a Matter of Law.**

Similarly, Plaintiff has failed to allege a conspiracy under 42 USC § 1985. 42 USC § 1985 creates a cause of action where "two or more persons in any State of Territory conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 USC § 1985(3). To maintain a § 1985 conspiracy action, a plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F3d 105, 110 (2d Cir. 2003). "[A] complaint containing only conclusory, vague, or general allegations of the conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Boddie v. Schnieder, 105 F3d 857, 862 (2d Cir. 1997).

Here, Plaintiff's allegations are wholly conclusory; he has failed to allege any facts sufficient to show the existence of a conspiracy designed to deprive him of his rights or any act taken in furtherance of such a conspiracy. As set forth above, the mandatory training program was not religious but related to preventing discrimination in the workplace. The New York State

7

Division of Human Rights determined that this was a meritorious endeavor, not a discriminatory one. Therefore, there can be no conspiracy to achieve an unlawful end. Lastly, Plaintiff has failed to plead that Defendants acted with religious or other class-based animus against a protected class of which he is a member. Britt v. Garcia, 457 F3d 264, 270 n.4 (2d Cir. 2006) ("A section 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.") (citation and internal quotation marks omitted).

As a result, Plaintiff's claims under 42 USC § 1985 must be dismissed and Defendant's Motion for Summary Judgment must be granted as a matter of law.

**C.     Plaintiff's Claims for Violations of 42 USC § 1986 Must be Dismissed as a Matter of Law.**

42 USC § 1986 provides that any person who, having knowledge that any of the wrongs conspired to be done, and mentioned in § 1985, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do shall be liable to the injured party. It is well-established that a violation of § 1986 is predicated on a violation of § 1985, since the former provides a remedy for the latter. *See* Brown v. City of Oneonta, N.Y., 221 F3d 329, 341 (2d Cir.2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim."). Because there is no viable basis for Plaintiff's 42 USC § 1985 claim, this Court must dismiss Plaintiff's claim under 42 USC § 1986 as a matter of law.

**D.     Plaintiff's Claims for Violations of Title VII of the Civil Rights Acts of 1964 Must be Dismissed as a Matter of Law.**

Plaintiff alleges that he was disciplined and terminated for requesting a religious accommodation to the training. Specifically, Plaintiff alleges that E2CCB fired him because he requested E2CCB schedule mandatory training sessions concerning the persecution of Christians. It is alleged as an Affirmative Defense in Defendants' Answer that Plaintiff was not terminated

8

because he requested that accommodation; he was terminated because he did not attend a mandatory training session. Plaintiff cannot offer any evidence to the contrary.

Plaintiff also raises a failure to accommodate claim under Title VII. To state a failure to accommodate claim, "a plaintiff must show that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Siddiqi v. N.Y. City Health & Hosps. Corp., 572 F Supp 2d 353, 369-70 (SDNY 2008).

To prove a prima facie case of disparate treatment discrimination, a plaintiff must adduce sufficient evidence to permit a reasonable jury to find that: (1) she is a member of a protected class; (2) she was qualified for the job at issue; (3) she was subjected to an adverse employment action; and, (4) the circumstances of that adverse action give rise to an inference of discrimination based on her class membership. Bentley v. AutoZoners, LLC, 935 F3d 76, 88 (2d Cir. 2019). If a prima facie showing is made, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Id. Finally, if the employer carries that burden, a plaintiff must submit admissible evidence from which a finder of fact could infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination. Menaker v. Hofstra Univ., 935 F3d 20, 30 (2d Cir. 2019).

As set forth above, Plaintiff cannot demonstrate that he is a member of a protected class. Even if Plaintiff was a member of a protected class, the circumstances of that adverse action do not give rise to an inference of discrimination based on his class membership. Plaintiff cannot demonstrate that Defendants harbored any bias, or that their actions were in any way related to such bias. Plaintiff was terminated for insubordination for his failure to attend a mandatory

training program, not due to his religious beliefs.

If the employee establishes a *prima facie* case of religious discrimination, the burden shifts to the employer to establish that providing the employee with a reasonable accommodation of the would have imposed an undue hardship on business operations. Undue hardship under Title VII is defined as "more than de minimis" cost or burden -- a substantially lower standard for employers to satisfy than the "undue hardship" defense under the Americans with Disabilities Act (ADA), which is defined instead as "significant difficulty or expense." *See* Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977).

It is alleged as an Affirmative Defense in Defendants' Answer that even if Plaintiff succeeds in establishing a *prima facie* claim, which is denied, that the mandatory training session violated his religious beliefs, Title VII does not require E2CCB to accommodate his religious beliefs because the accommodation would impose an undue hardship on the employer's business operations. E2CCB initiated the training as a District-wide response to changing cultural norms. The training was intended to protect marginalized members of the LGBTQ community, some of whom were "transitioning" at that time, from harassment and discrimination. The training was necessary to teach all employees the appropriate way to support and interact with that community. District Superintendent David O'Rourke indicated that he and administrative staff were unable to identify a reasonable accommodation that did not weaken that message.

Finally, Plaintiff alleges that the Defendants opposed and defeated Plaintiff's application for unemployment benefits. However, the ultimate decisionmaker with respect to unemployment benefits is the New York State Department of Labor, not the Defendants. Defendants cannot be held liable for a determination that they did not make. Defendants have alleged the same as an Affirmative Defense in their Answer. It is important to note that both the New York State

Unemployment Insurance Appeal Board and the New York State Appellate Division Third Department found that Plaintiff engaged in disqualifying conduct which did not entitle Plaintiff to unemployment benefits.

Based upon all of the above, it is clear that there was no employment discrimination against the Plaintiff based upon race. There is no viable claim for a failure to accommodate or disparate treatment and disparate impact under Title VII. As a result, Defendant's Motion for Summary Judgment must be granted as a matter of law.

### E.     Plaintiff's Claims for Violations of the New York State Human Rights Law Must be Dismissed as a Matter of Law.

According to N.Y. Executive Law § 296 ("NYHRL"), "It shall be an unlawful discriminatory practice for an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." Plaintiff's claims equally fail based upon the analysis of the facts presented in this case.

As set forth in Attorney Affidavit and Statement of Undisputed Facts, E2CCB was approached by a transgender employee on the LoGuidice campus who requested accommodations to facilitate a gender transition. Plaintiff, as was all other E2CCB employees, was directed to attend a training program on transgender and gender identity issues to prevent discrimination and harassment. Although E2CCB's past training had incorporated district-wide training on gender identity and sexual orientation into larger topical areas, it became very clear as they discussed the human resources response to this employee's multifaceted needs that there were significant gaps

11

in E2CCB's employee training. E2CCB determined that additional training was necessary to protect and support LGBTQ students and employees.

As a result, all E2CCB employees, including Plaintiff were required to attend a mandatory training program on these issues. Upon learning of this mandatory training program, Plaintiff vocalized to E2CCB employees that he did not believe he should be required to attend and would not attend. Plaintiff then sent an email declining to attend until such time that E2CCB provided a similar program on offending Christians and stated that he had been offended by the use of certain language. It should be noted that Plaintiff never reported any such activity.

In response to Plaintiff's email, Plaintiff was advised that the training program was mandatory for all employees and its purpose was to create a safe workplace that is free from harassment in accordance with E2CCB's policies. Plaintiff was also encouraged to report if he had witnessed or was subjected to any harassment or discrimination. Plaintiff responded in an email that he would not change his decision and that he would not attend the training program. Then, Plaintiff failed to attend the mandatory training program on February 27 or 28, 2018.

A subsequent email was send by E2CCB advising anyone who missed the prior program training sessions that make-up session had been scheduled. Plaintiff advised that he would not attend the make-up training program sessions either. After learning of Plaintiff's failure to attend, representatives of E2CCB as well as Plaintiff's union representative met with Plaintiff to encourage Plaintiff to attend and to advise Plaintiff that the purpose of the training was not religious and to advise of the repercussions should he fail to attend. Plaintiff was advised that his failure to attend could result in termination. In fact, Plaintiff executed a document reflecting his understanding of the same. Plaintiff again reiterated that he would not attend the training program. Plaintiff did not attend the make-up training program sessions on May 22, 2018.

12

E2CCB discussed the possibility accommodating the Plaintiff due to his failure to attend the mandatory training session due to his religious objections. E2CCB determined that it was unable to accommodate Plaintiff's request to be excluded from the mandatory training session because allowing *anyone* to miss the training would have undermined E2CCB's commitment to creating a supportive culture for *all* employees and students. Dr. O'Rourke and the other administrators felt that if E2CCB granted *any* group or person – religious or not – a blanket exemption from the mandatory training, they would have been unable to prevent that group or person from targeting and discriminating against employees and students in the LGBTQ community. Thus, Dr. O'Rourke concluded that granting Plaintiff the requested exemption would undercut the purpose of the training – to protect all individuals from unlawful discrimination.

A subsequent meeting took place with Plaintiff and Plaintiff advised that he did not have an excuse for failing to attend the make-up training sessions. Plaintiff recognized and acknowledged that his failure to attend was insubordination. Plaintiff was advised that he was terminated for his refusal to attend the mandatory training program. Plaintiff advised those in attendance at the meeting that they would be hearing from Plaintiff's lawyer.

All E2CCB employees were required to attend the mandatory training. As noted in its determination, the New York State Division of Human Rights, the training was not religious but related to preventing discrimination in the workplace.

E2CCB was not required to accommodate his religious beliefs because the accommodation would impose an undue hardship on the employer's business operations. E2CCB initiated the training as a District-wide response to changing cultural norms. The training was intended to protect marginalized members of the LGBTQ community, some of whom were "transitioning" at that time, from harassment and discrimination. The training was necessary to teach all employees

the appropriate way to support and interact with that community. District Superintendent David O'Rourke indicated that he and administrative staff were unable to identify a reasonable accommodation that did not weaken that message.

Based on all of the above, Plaintiff's claims based upon New York State's Human Rights Law must be dismissed and Defendant's Motion for Summary Judgment must be granted as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Defendants respectfully request that summary judgment be granted in their favor and that the Plaintiff's Complaint be dismissed in its entirety.

Dated:   October 14, 2021
         Buffalo, New York

                                    Adam C. Ferrandino, Esq.
                                    Attorneys for Defendants
                                    ERIE 2 CHAUTAUQUA-
                                    CATTARAUGUS BOARD OF
                                    COOPERATIVE EDUCATIONAL
                                    SERVICES, DAVID O'ROURKE, in his
                                    official capacity, JOHN O'CONNOR, in his
                                    official capacity, BRIAN LIEBENOW,
                                    LAURIE BURGER, and TRACY SMITH-
                                    DENGLER
                                    110 Pearl Street, Suite 400
                                    Buffalo, New York 14202
                                    (716) 852-5875
                                    aferrandino@feldmankieffer.com

TO:   Kristina S. Heuser, Esq.
      TYLER & BURSCH, LLP
      Attorney for Plaintiff
      RAYMOND ZDUNSKI
      25026 Las Brisas Road
      Murrieta, CA 92562
      (951) 600-2733
      kheuser@tylerbusch.com